IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| RICHARD MIMS,            )<br>                          )<br>    Plaintiff,         )<br>                          )<br>    v.                    )<br>                          )<br>                          )<br>D. BOGAN,                 )<br>                          )<br>    Defendant.            ) | <br><br><br><br>CIVIL ACTION NO.<br>  1:12cv887-MHT<br>       (WO) |

**OPINION**

Plaintiff Richard Mims brought this action against defendant D. Bogan asserting unlawful arrest and use of excessive force in violation of the Fourth Amendment of the United States Constitution as well as battery in violation of Alabama law.  Subject-matter jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) (civil rights), and 1367 (supplemental). The case is now before the court on Mims's motion to set aside the dismissal and reinstate the case and Bogan's motion to enforce the settlement.  A hearing

was held on both motions on July 29, 2015.  The motion to set aside will be granted, the case will be reopened, and the motion to enforce the settlement will be granted as well.

## I. BACKGROUND

On June 2, 2015, Bogan's counsel informed the court that the parties in this case had reached a settlement agreement.  Based on this reported settlement, the court entered a judgment dismissing the case but also providing, among other things, that the parties had 49 days to file a motion to have the dismissal set aside and the case reinstated for a determination as to whether there was, in fact, a settlement and, if so, for its enforcement.  On July 8, 2015, Mims filed a motion to set aside the judgment, claiming that there was no settlement.  Bogan disagreed that there was no settlement and has moved to enforce the settlement

2

agreement. He submitted email exchanges as evidence. The emails at issue show the following:

On May 21, Mims's counsel wrote that Mims would not go any lower than $ 16,000, but that his counsel would be willing to reduce attorney fees by $ 2,000, thereby reducing the settlement offer to $ 14,000. On the same day, Bogan's counsel wrote back, saying that "[t]he offer of Mr. Mims to settle the case for $ 14,000.000 is accepted." Email from Joe Adams to Leroy Maxwell (doc. no. 86-2) at 1. Bogan's counsel then said he would draft the settlement paperwork and would send it to Mims.

On June 1, Mims's counsel wrote to Bogan's counsel that "I do not have a problem with you notifying the Judge that we have reached a settlement agreement in principle, pending execution of release forms." Email from Leroy

3

>Maxwell to W. Allen Sheehan (doc. no. 86-5) at 1.

Over the next month, the parties discussed the settlement agreement, to which Bogan proposed adding language that would expedite the dispersal of funds to Mims.  Bogan had already sent a settlement agreement to Mims, who had not yet signed it.  When Bogan sent the new version, Mims's counsel wrote back, asking if he could arrange for Mims to come to defense counsel's office to sign the new agreement.  Mims never showed up, and the agreement has not been signed.

## II. DISCUSSION

As a threshold, both parties agree that the case should be reopened.  The court agrees and will grant the motion to reopen.  However, the parties disagree what should occur after the case is reopened.  Mims argues, without providing any detail, that the parties never reached a settlement.  Bogan responds that the

emails show a binding settlement agreement. The court agrees with Bogan and finds that the parties made a binding settlement agreement.

A district court ordinarily has the power to enforce a settlement agreement entered into by litigants while litigation is pending before that court. Mass. Cas. Ins. Co. v. Forman, 469 F.2d 259, 260 (5th Cir. 1972) (per curiam).[*] In determining whether a valid, enforceable settlement agreement has been reached by the parties, federal courts have differed on the source of law to apply. Courts have decided, on some occasions, that federal common law governs, see, e.g., Eatmon v. Bristol Steel & Iron Works, Inc., 769 F.2d 1503, 1516 (11th Cir. 1985) (citing Fulgence v. J. Ray McDermott & Co., 662 F.2d

---

[*] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

1207, 1209 (5th Cir. 1981)), and, on other occasions, that state law governs, see, e.g., Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000). See also Hogan v. Allstate Beverage Co., Inc., 821 F.Supp.2d 1274, 1279 (M.D. Ala. 2011) (Thompson, J.) (discussing the differing approaches). In this case, the court need not resolve which body of law applies, because a settlement was reached under basic, hornbook contract law, regardless as to whether it is viewed as federal or state.

A valid contract requires "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." Shaffer v. Regions Fin. Corp., 29 So. 3d 872 (Ala. 2009). In other words, any and all terms essential to the contract must be both defined and agreed-upon. See Hogan, 821 F. Supp. 2d at 1280 (citing Browning v. Peyton, 918 F.2d 1516, 1521 (11th Cir. 1990)). "An agreement, even an oral one, will not automatically be

6

considered non-binding merely because a later, more formal document was envisioned."  See Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrusionstechnik GMBH, 718 F. Supp. 886, 892 (M.D. Ala. 1989) (Dubina, J.); see also Restatement (Second) of Contracts § 27 (1981) ("Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations.").

"[I]t is well settled that where there is uncertainty and ambiguity in a contract, it is the duty of the court to construe the contract so as to express the intent of the parties."  Kelmore, LLC v. Alabama Dynamics, Inc., 20 So. 3d 783, 791 (Ala. 2009) (internal quotation marks omitted).  "[I]f the contract is ambiguous, parol or extrinsic evidence will be

allowed to clarify the contract." Marriott Int'l, Inc. v. deCelle, 722 So. 2d 760, 762 (Ala. 1998). "Although the destruction of contracts because of uncertainty is disfavored under the law, if a court cannot discern the intentions of the parties to a contract because the contract is so vague and indefinite, the contract is void on the ground of uncertainty." Drummond Co., Inc. v. Walter Industries, Inc., 962 So. 2d 753, 774 (Ala. 2006); see also White Sands Group, L.L.C., v. PRS II, LLC, 998 So. 2d 1042, 1051 (Ala. 2008) ("[A] contract that leaves material portions open for future agreement is nugatory and void for indefiniteness.") (internal citations omitted). For an alleged contract to be considered void on this basis, "the indefiniteness must reach the point where construction becomes futile." Poole v. Prince, 61 So. 3d 258, 275 (Ala. 2010) (internal citations omitted).

In this case, it is clear there was a valid contract. In response to a $ 16,000 offer from Bogan,

Mims's counsel responded, by email, that he could do $14,000. This $14,000 was a counteroffer, which Bogan accepted via email on May 21. Therefore, there was a written offer (Mims's email offering $14,000), a written acceptance (Bogan's email), and consideration (payment for settlement of the case). The contract is valid.

Mims points to a June 1 email, where his counsel stated that he did "not have a problem with you [Bogan's counsel] notifying the Judge that we have reached a settlement agreement in principle, pending execution of the release forms," Email from Leroy Maxwell to W. Allen Sheehan (doc. no. 86-5) at 1. Relying on this email, Mims argues that there was no settlement without execution of the release forms. In other words, he argues that execution of the release forms was a material term of the contract that was never completed. However, as noted above, the mere fact that parties intend to memorialize an agreement in

a more formal way does not make the initial offer and acceptance non-binding. Samson Plastic Conduit, 718 F. Supp. at 892; Restatement (Second) of Contracts § 27 (1981). Here, there is no indication that signing the release forms was a material term of the deal when Mims made the offer for $ 14,000 or when the offer was accepted, nor is there any indication that the written release forms would have changed a material term. While Mims may not have wanted to inform the court that the settlement agreement was reached in principle, pending release forms, that parol evidence is not enough to raise any ambiguity in the essential terms of the contract, much less one so "vague and indefinite" as to force the court to destroy the contract.

***

Accordingly, pursuant to this opinion, the court will enter an order, first, setting aside the dismissal of this case and reinstating it and, second, enforcing the settlement agreement. Counsel for Bogan informs

the court that Bogan would be satisfied with simply an order declaring that there is a settlement and, because the case is now settled, a judgment dismissing the case with prejudice.  Bogan's counsel says a release is no longer necessary.  The order of the court will, therefore, include the requested declaration, and a judgment of dismissal with prejudice will follow and be entered as well.

    DONE, this the 30th day of July, 2015.

                                                /s/ Myron H. Thompson
                                   **UNITED STATES DISTRICT JUDGE**